Argued at Pendleton May 4, affirmed June 1, 1920.

# HORN *v.* ELGIN WAREHOUSE CO.

(190 Pac. 151.)

**Witnesses—In Action for Breach of Warranty of Seed Wheat, Plaintiff can be Asked on Cross-examination how much he Paid.**

1. In an action for breach of warranty of the variety of seed wheat, where the purchase of any wheat was in issue under the pleadings, plaintiff can be cross-examined as to how much he paid for the wheat in question; since payment of the purchase price is an element of the consummated sale of the wheat.

**Sales—Evidence That Variety of Seed Sold Would have Produced Crop Next Year Admissible in Mitigation.**

2. In an action for breach of warranty that wheat purchased for seeding was a spring wheat, whereas in fact the wheat delivered was a winter wheat, evidence that, if the wheat was of the variety claimed by plaintiff, it would have produced a crop next year, was admissible in mitigation of damages under the general issue.

**Evidence—Admitting Evidence of Experiments Rests Largely in Court's Discretion.**

3. In an action for breach of warranty of variety of wheat sold as seed for spring planting, defendant's evidence that another purchased and planted some of the same lot of wheat and it produced no crop was evidence of an experiment, the admission of which rested largely in the discretion of the trial court to determine whether the conditions of the experiment were similar to those of the case in issue.

**Evidence—Excluding Plaintiff's Evidence of Unsuccessful Planting Held Proper, Though Defendant Showed Successful Planting.**

4. In an action for breach of warranty that wheat purchased for seed was a spring wheat variety, evidence that plaintiff's witness purchased some of the same lot of wheat, and it produced no crop, was properly excluded, because the conditions were not shown to be the same; though defendant's testimony that others sowed some of the wheat, and it produced a crop of the variety specified, was admissible.

**Sales—Evidence That Defendant's Foreman Purchased Wheat for Another Held Admissible to Show Alleged Agency.**

5. In an action for breach of warranty of wheat sold for seed, where defendants alleged that they sold the wheat merely as agents for a disclosed principal, evidence by defendant's foreman that he bought the wheat for the account of the alleged principal was admissible.

**Trial—Submission of Special Issues is Discretionary.**

6. Whether particular questions of fact shall be submitted to the jury for their finding in addition to the general verdict is within the discretion of the trial court.

**Trial—Submission of Special Issues Held not Abuse of Discretion.**

7. In an action for breach of warranty of wheat sold for seed, where defendant pleaded a sale as agent for a disclosed principal, it was not an abuse of the trial court's discretion to submit special questions whether the sale was made as agent and whether the agency was disclosed to plaintiff.

**Trial—General Verdict Controls Unless Special Finding is Inconsistent.**

8. Under Section 155, L. O. L., providing that a special finding inconsistent with the general verdict shall control, the general verdict must prevail unless the special finding is inconsistent.

**Sales—Evidence Held not to Show Express Warranty of Variety of Seed Wheat.**

9. In an action for breach of warranty of the variety of wheat sold for seed, plaintiff's testimony that he knew defendant was not selling the wheat as seed wheat under the restrictions of law *held* to warrant the jury in finding there was no warranty of quality or variety, so as to render the rule of caveat emptor applicable.

**Sales—Warranty of Variety of Wheat Seed Held not Implied Where Buyer Inspected it.**

10. Where wheat was sold for seed without any express warranty of quality or variety, and the buyer had opportunity to inspect it before he purchased it, a warranty of variety cannot be implied, though the buyer was unable to determine the variety by inspection, in the absence of showing that the seller knew of such inability or practiced fraud on the buyer.

**Sales—General Verdict for Defendant Sustained, Notwithstanding Finding of Undisclosed Agency.**

11. A finding by the jury on special issues that defendant's agency for another was not disclosed to plaintiff does not warrant judgment for plaintiff, notwithstanding a general verdict for defendant, where there was evidence from which the jury could find that there was no warranty of the variety of seed wheat for breach of which plaintiff brought his action.

From Union: JOHN W. KNOWLES, Judge.

In Banc.

The plaintiff, engaged in farming certain described lands in Union County, says in substance that on or about the —— day of April, 1919, at Elgin, Oregon, he ordered of the defendant five sacks of Red Chaff club wheat, a spring wheat suitable for spring seeding, to be used as seed and sown for the purpose of raising a crop upon said premises during 1919, all

of which was communicated to the defendant. He further says:

"That the defendant then and there sold and delivered to the plaintiff five sacks of wheat, for a valuable consideration, and then and there, as part of the contract of sale, represented and warranted the same to be of the variety ordered, viz., Red Chaff club wheat."

He states that he did not know and could not tell from inspection whether it was that kind of wheat or some other variety, but confided in and relied solely upon the representations and warranty of the defendant as alleged. He goes on to say that, relying upon the representations and warranty of the defendant, he sowed the wheat on his premises, but in truth and in fact the grain was not of the Red Chaff club variety, but was a winter wheat, by reason of which it did not produce a crop during the summer of 1919, all to his damage in the sum of $500.

The answer consisted solely of a denial of the complaint, except the statement of the corporate character of the defendant.

At the trial, the defendant claimed that the wheat belonged to the Kerr-Gifford Company and that it conducted the sale solely as the agent of that concern, all of which it avers was disclosed to the plaintiff at the time. There was a dispute in the testimony on that subject. The court submitted to the jury two special interrogatories in relation to that matter. After hearing the charge of the court at the close of the trial, the jury retired and later returned the following verdict:

"We, the jury in the above entitled action, find for the defendant.

"J. E. Reynolds, Foreman.

"Q. Did the wheat delivered by the defendant company to the plaintiff, belong to the defendant or to Kerr-Gifford Company?

"A. Kerr-Gifford Company.

"Q. If you find that the wheat belonged to the Kerr-Gifford Company, was plaintiff informed at the time that he purchased the wheat that Kerr-Gifford Company was the owner thereof?

"A. No.

"J. E. Reynolds, Foreman."

On the reception of this verdict the plaintiff moved the court for judgment in his favor notwithstanding the general verdict, and that the plaintiff's damages be assessed. This motion was denied and judgment was rendered for the defendant. The plaintiff appeals.                     Affirmed.

For appellant there was a brief and an oral argument by *Mr. L. Denham.*

For respondent there was a brief and an oral argument by *Mr. R. J. Green.*

BURNETT, J.—1. It appears that the court allowed the defendant to ask the plaintiff on cross-examination how much he paid for the wheat in question, and the plaintiff predicates error on this matter. An issue in the case was whether or not the plaintiff had bought the wheat at all. One possible element of a consummated sale is the payment of the purchase price. Hence it was legitimate cross-examination of him on that subject to ask the question as stated.

2. The plaintiff's contention was to the effect that the wheat actually delivered was of the variety called "Forty-fold." In cross-examining his witnesses the defendant was permitted to ask them whether

Forty-fold would not have lived over the year 1919 and produced a crop in 1920. This testimony was admissible in mitigation of damages under the general issue as tending to show that the plaintiff's loss was not total, but that he might expect belated returns from his venture.

There was testimony to the effect that the wheat in question was grown on the farm of Luther Hindman, and that it was stored in the defendant's warehouse in a separate pile in sacks. The plaintiff called one Smith as a witness, asked him if he sowed any grain "this spring," which being answered affirmatively, this question was propounded: "Upon your land—where did you get the seed?" The defendant's objection that this question was immaterial was sustained. The plaintiff then made this offer of proof:

"I want to know where he got the wheat, to be followed by the question what kind of wheat it was, expecting to prove that he got it from the Elgin Warehouse Company; that he ordered Red Chaff club wheat and sowed it as such, and that it sprouted up above the ground, and there it died—failing to produce a crop."

On the other hand, in support of its case the defendant produced the testimony of witnesses to the effect that they got some of this same Hindman wheat which they sowed during the season of 1919, and that it produced Red Chaff club wheat.

3. All these matters about planting wheat were in the nature of proof of experiments and, as stated by Mr. Justice LORD in *Leonard* v. *Southern Pacific Co.*, 21 Or. 555 (28 Pac. 887, 15 L. R. A. 221):

"In all cases of this sort, very much must necessarily be left to the discretion of the trial court; but when it appears that the experiment or demonstra-

tion has been made under conditions similar to those existing in the case at issue, its discretion ought not to be interfered with.''

4. The offer made by the plaintiff in reference to the Smith seeding does not show that the conditions under which the experiment was made were the same as those affecting the planting made by the plaintiff. Necessarily the growth of seed is influenced by the nature and moisture of the soil and climatic conditions, as well as by cultivation. In the offer nothing is stated except that Smith ordered Red Chaff club wheat from the defendant, sowed it as such and failed to produce a crop. All other ingredient conditions are omitted from the proposal. It is essential to its admissibility in evidence that the experiment relied upon be substantially similar to the one in issue. At first blush, one would say that the court did not hold the scale of justice at an even balance in refusing the plaintiff's offer of proof and at the same time allowing the defendant to show that the same kind of wheat sown by other parties produced a crop of Red Chaff wheat. It is a law of nature that men do not gather grapes of thorns, or figs of thistles. Hence when it appears that planting the wheat obtained from the defendant produced Red Chaff club wheat, all conditions of soil, climate and cultivation are merged in the ultimate result. The court was well within its discretion in allowing the result of the experiments offered in proof by the defendant and in excluding the negative experiment offered by the plaintiff. The former savored of demonstration while the latter did not show that it was grounded on the same or similar conditions that spelled failure for the plaintiff. On the general subject of experiments, reference is made to

*Kohlhagen* v. *Cardwell,* 93 Or. 610 (184 Pac. 261), where it is discussed by Mr. Justice Bennett.

5. Another complaint on appeal is:

"That the court erred in overruling the plaintiff's objection to the question propounded by the defendant to the witness Harlan Huffman, as to how the warehouse company paid Hindman for the wheat sold by him to the warehouse company."

Huffman was the foreman or manager of the defendant's warehouse. The object of his testimony was to show that he purchased the wheat from Hindman for the account of Kerr-Gifford Company, and it was permissible for him to narrate the manner in which the purchase was made.

6. Finally, the plaintiff complains of the submission by the court of special interrogatories to the jury, and in overruling his motion for judgment in his favor on the special verdict. In *Herrlin* v. *Brown,* 71 Or. 470 (142 Pac. 772), it is said:

"Submission of the particular question of fact to be answered by the jury in addition to their general verdict in the case at bar was a matter wholly within the discretion of the trial court, and will not be reviewed on appeal": citing *Swift* v. *Mulkey,* 14 Or. 59 (12 Pac. 76); *Knahtla* v. *Oregon Short Line R. Co.,* 21 Or. 136 (27 Pac. 91); *Wild* v. *Oregon Short Line R. Co.,* 21 Or. 159 (27 Pac. 954); *White* v. *White,* 34 Or. 141 (50 Pac. 801, 55 Pac. 645); *Palmer* v. *Portland R. L. & P. Co.,* 62 Or. 539 (125 Pac. 840).

7. It was admissible under the general issue to show that the transaction occurred between the plaintiff and the Kerr-Gifford Company, operating through the defendant as the known agent of that concern. If true, this would refute the charge of the plaintiff that he dealt directly with the defend-

ant as a principal party. *Apropos* of that issue it was competent to prove that the wheat was the property of Kerr-Gifford Company. It was equally appropriate to determine whether or not the agency of the defendant was disclosed to the plaintiff. The interrogatories were proper on that issue, and we cannot say that the trial judge abused his discretion in calling for a special verdict on that branch of the case. From the special verdict all that can be deduced is that the agency of the defendant was not disclosed to the plaintiff at the time of the transaction.

8. It is said in Section 155, L. O. L.:

"When a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter and the court shall give judgment accordingly."

The plain import of this section is that the general verdict must prevail unless the special finding of fact shall be inconsistent therewith. The jury might well have found in this case, as indicated by its special verdict, that the defendant dealt with the wheat in question as its own without revealing to the plaintiff that the property was that of another; and, notwithstanding all this, might have found that the defendant made no warranty respecting the variety of the wheat or its fitness for seed.

9. On this branch of the case we here insert an extract from the plaintiff's own testimony on cross-examination respecting the transaction with the foreman of the defendant:

"Q. You don't remember him saying anything about that—that he did not have seed wheat for sale?

"A. Oh, well; now I know well enough they wouldn't sell me what you would call seed wheat, if I had went there to buy seed wheat. I would

have had to take it to the mill and had it cleaned. I went there to buy some spring wheat that was suitable for seed wheat. If it had oats, wild oats, in it, I expected to take it to the mill just as I did and have it taken out, and have it prepared for seed.

"Q. You knew they were not selling you seed wheat?

"A. Well, I knew they were not selling it under the seed law.

"Q. And that they were not guaranteeing it as seed wheat, didn't you?

"A. All I know, I went there and asked him if he had any little club, and he said he had none. I went there with the expectation of taking my chances on the wheat as to whether it would grow or not—as to whether it was clean or not. I was going to avail myself of that, after I had this talk with him and have it cleaned; and when he said he didn't have any little club, but he said he had some Red Chaff club there that would be suitable for spring seed— spring wheat, that is.

"Q. You are familiar with the business of the Elgin Warehouse Company, and they told you they would not sell, or guarantee any wheat, seed wheat?

"A. I knew that they would not guarantee any wheat for seed under the laws of the state, what the law requires them to go through in order to sell seed wheat.

"Q. So you figured you were taking a large chance on your end of it, didn't you?

"A. Yes, I had bought seed wheat there before."

The jury was justified in believing that there was no warranty of the quality or variety of the wheat. It is instructive to consider the doctrine of *Barnard* v. *Kellogg,* 10 Wall. 388 (19 L. Ed. 987, see, also, Rose's U. S. Notes), quoted thus by Mr. Justice LORD in *Morse* v. *Union Stock Yard Co.,* 21 Or. 289 (28 Pac. 2, 14 L. R. A. 157); 34 Cent. L. J. 153:

" 'No principle of the common law,' said Mr. Justice DAVIS, 'has been better established, or more

often affirmed, both in this country and in England, than that in sales of personal property, in the absence of an express warranty, where the buyer has an opportunity to inspect the goods, and the seller is guilty of no fraud, and is neither the manufacturer nor grower of the article he sells, the maxim of *caveat emptor* applies.' ''

10. The testimony does not disclose any express warranty. All that could be derived from it under any view of the case would be an implied warranty, such as was discussed in *Morse* v. *Union Stock Yard Co.*, where the contract was made by correspondence in which the plaintiff ordered the defendant to ''get two carloads of good beef cattle.'' There, the plaintiff had no opportunity to inspect the animals. They were shipped to him by railroad after he had paid for them, and the court held in substance that where goods or chattels are sold by description, there is an implied condition that the goods or chattels delivered shall correspond to that description, and that in such a sale by description, when the buyer has not inspected the goods and has had no opportunity therefor, there is a condition precedent that the goods or chattels shall answer the description, and an implied warranty that they shall be fit for the particular purpose to which they shall be applied, when that purpose is known to the vendor. The case at bar is of a different sort. The plaintiff had the opportunity to inspect the wheat and to determine for himself its variety and quality. That the plaintiff was unable through want of skill or otherwise to distinguish between Red Chaff wheat and other kinds does not affect the case as stated in the complaint, for it is not averred that the defendant knew that he was deficient in ability to classify grain as to its variety, or that the defendant practiced any

fraud upon him on that account.   The jury properly might have considered that it was a case falling within the doctrine of *caveat emptor,* although the parties were dealing as if the wheat were the property of the defendant and as if the question of agency or property in the Kerr-Gifford Company were not involved.

11. The general verdict for the defendant is not impeached by the special verdict.   It is consistent with what the jury legitimately found to be the case, that there was no warranty of the wheat, either express or implied.   For these reasons the judgment is affirmed.                                     AFFIRMED.