## THE AMERICA.

### GYLLENHAMMAR v. MICHAEL et al.

District Court, S. D. New York.

May 21, 1940.

Hamlet O. Catenaccio, of New York City, for libellant.

Mahar & Mason, of New York City (William J. Mahar, of New York City, of counsel), for respondents.

KNOX, District Judge.

This libel is in rem against the motor vessel "America" and in personam against Anna S. Michael, the owner of the craft. The boat is used to carry passengers to and from the fishing grounds in and about the waters of Sheepshead Bay. She is 48' 8" long and has a beam of 14' 8". Between perpendiculars, her registered depth is five feet. Her tonnage is 21.65 and she is equipped with Diesel engines.

On the morning of August 20, 1939, at about 4 o'clock a. m., and just after the vessel had anchored at the "Tin Can Grounds" in Sheepshead Bay, off Rockaway Point Inlet, Axel Gyllenhammar, a passenger, fell overboard. A strong tide swiftly carried the man away and he was drowned. Having left a wife and two children, libellant seeks recovery of damages upon their behalf.

The allegations of fault are that "the respondent owner was careless and negligent in that she, her agents, servants, and employees put out to sea with the condition of the weather and the condition of the sea unfit for sailing, and putting out to sea in a vessel that was unseaworthy in the then existing condition of the sea and the condition of the weather; in neglecting to give notice, notify or warn the deceased of the dangers of the sea, of the weather, and of the unseaworthiness of the vessel; in failing and neglecting to protect and safeguard the life and limbs of the deceased; and in failing and neglecting to employ and engage efficient and competent sailing master and crew."

No one saw Gyllenhammar go into the water, but certain it is he was not washed overboard, as is alleged in the libel. The proof is that in proceeding to the fishing grounds, the boat shipped no water. She did take on some spray which, according to one of libellant's witnesses, "would just hit the side and splash up" and, he, sitting on the top edge of a bulwark, having a height of about 13 inches above the deck, "got a wet back from it." This witness described the waves as about 8 feet high, but the estimate, from his description of the spray, is doubtless exaggerated. According to the most competent testimony, the weather conditions were that—a fifteen mile wind was blowing and that rain fell intermittently. Upon arrival at the fishing grounds, the boat was anchored on a 300 foot line and rode easily. A three foot ground swell was running and the craft, of course, rose, fell and rocked in response. Hardly had the boat come up on her line, than decedent, who had been sitting on the bulwark, playing a harmonica, toppled over the side, and was swept away.

Under the conditions of wind, weather and sea, it cannot be said that a boat of the size and type of the "America" was guilty of culpable negligence in having undertaken the trip to the fishing grounds.

414

True it is that the deceased, and the two companions who accompanied him, heard a storm warning announced over a radio in the bar and restaurant in which they refreshed themselves just before going aboard the boat. It is also true, that the wind, at the Whitehall Building, registered a velocity of 25 miles an hour. This fact, however, is no indication of what the wind was in and about land-locked Sheepshead Bay. There is no official record of evidence of weather conditions either there or nearby. Whatever they were, they were not sufficient to deter the experienced master of the boat, his two mates, a bait man, and twenty passengers from embarking upon the trip.

From all this proof, I have no hesitancy in concluding that the boat, as a craft, was seaworthy, and that those in charge of her navigation subjected the passengers to no unusual risks. I find also that Gyllenhammar's death was due to his own fault and foolhardiness.

Before going on board, he had consumed three glasses of beer of eight ounces each. And, although he was familiar with the boat and was aware that he could sit on top of the passenger cabin or within the cabin itself, he persisted in sitting on the top of the bulwark, and in the rain. Atop the bulwark and 39½" above the deck, there was an iron pipe railing supported by stanchions. During the half or three-quarters hour trip from the vessel's dock to the fishing grounds, decedent entertained himself and the other passengers by playing a harmonica. Apparently he protected himself by encircling one of the stanchions with an arm. According to the testimony of three members of the crew of the "America," he was warned not to sit upon the bulwark, being told that to do so was dangerous. His reply was that he was all right or "mind your own business."

Since there is no direct evidence of what happened at the instant that decedent went into the water, I hazard the conjecture that after the boat anchored, he started to rise to get his fishing tackle in order, and that, having loosened his hold about the stanchion, the boat rolled with a swell, and he, losing his balance, went into the sea.

With the cries of "man overboard" and within a minute or two, the following sequence of events took place in the excitement—a life preserver was thrown out which fell within five feet from Gyllenham-

mar, who at that time was about twenty-five feet astern, the anchor cable was cut, a stationary searchlight on the pilot-house was turned on throwing a beam of light ahead, and the vessel was turned around and a search made for two hours, until daybreak, but to no avail.

I find as a fact that everything reasonable and possible was done to rescue the drowning man, and that the life-saving equipment was adequate and in proper condition at the time and under the circumstances. The G. W. Glenn, D.C., 4 F.Supp. 727, 729, 1934 A.M.C. 90.

The claims of the libelant must be supported by a fair preponderance of the credible evidence. She has failed to sustain this burden. Having failed to prove that the deceased was "washed overboard" through any negligence, fault or want of due care on the part of the respondents, and it being amply established that decedent's misfortune was due to his own negligence, a decree should be entered dismissing the libel. Suit having been brought under Admiralty Rule 38 of this court, the dismissal will be without costs.

Submit, on notice, findings of fact and conclusions of law.