**Robert SCHEINER, Jr., etc., et al., Libelants,**

v.

**Robert ST. JOVITE et al., Respondents.**

**No. 27768.**

United States District Court
N. D. California, S. D.

Feb. 5, 1960.

Crimmins, Kent, Bradley & Burns, San Francisco, Cal., for libelants.

Vernon L. Goodin, Bronson, Bronson & McKinnon, San Francisco, Cal., for respondents.

ROCHE, District Judge.

Libelant Robert Scheiner, Jr. has brought action to recover for injuries sustained when he fell from a motorboat owned by defendant Joseph D. McAleese and operated by defendant Robert St. Jovite. Libelant Robert Scheiner, Sr. seeks to recover medical expenses incurred in the treatment of his infant son.

On the morning of August 13, 1957, St. Jovite, 17 years old, borrowed a 14-foot Champion Sabre motorboat powered by a 40-horsepower outboard motor with the permission of the boat's owner, Mc-Aleese. The boat was capable of seating at least 3 persons comfortably in the cockpit and 2 or 3 others in an open area behind the cockpit. St. Jovite ob-tained possession of the boat at Nunes Bros. shipyard in Sausalito, California and proceeded to Bauman Bros. pier to pick up three passengers—Robert Scheiner, Jr., 16 years old, Peter Stickney, 16, and Richard Curr. With St. Jovite at the controls, the next few hours were spent pleasure riding on the waters of San Francisco Bay. The three passengers rode in various positions in the cockpit, in the open area behind the cockpit and straddling the bow. They changed places from time to time. Early in the afternoon, the boat returned to Sausalito and its occupants swam in the waters just off Shell Beach—an area adjacent to Bauman Bros.—while the boat was allowed to drift. After a short while, the four boys reboarded the boat. St. Jovite assumed the controls, Stickney took the seat to his right, Curr sat in the open area behind the cockpit and Scheiner sat on the bow, facing forward, his legs from the knees down straddling the boat and his hands holding a metal ring set into the forwardmost area of the deck. The boat proceeded forward in a southerly direction and then commenced to make a turn to starboard. At this point, Scheiner fell into the water and as the boat passed over him he was cut on the arm and hip by the propeller. The other occupants of the boat did not realize that Scheiner had fallen until they heard his body bump the side. St. Jovite cut the motor and Scheiner was able to swim to the boat. Stickney and Curr went over the side to help him board and St. Jovite then drove to Bauman Bros., where aid was summoned immediately.

It is libelant's contention that St. Jovite's operation of the boat was negligent in that he made a sharp turn while traveling at a high rate of speed and failed to give Scheiner warning of his intended maneuver. Respondent

counters that St. Jovite did not make a sharp turn at high speed, that there was nothing so dangerous or unexpected about his maneuver that libelant was entitled to a warning and that libelant, by placing himself in a precarious position on the bow, knowingly assumed the risk and is himself guilty of contributory negligence.

 The court cannot escape the conclusion that a boy of libelant's age and experience knew, or should have known, that straddling the bow of a fast motorboat is dangerous in the extreme. Under the circumstances—there having been adequate room in other far less dangerous places on the boat—his conduct was inexcusable. Libelant did not exercise the ordinary care for his own safety which his knowledge and experience required; hence, he was contributorily negligent. Isaacson v. Jones, 9 Cir., 1954, 216 F.2d 599.

Under the admiralty doctrine of comparative negligence, libelant's failure to exercise due care for his own protection does not, *per se*, bar his chances for making at least a partial recovery. Libelant, by his conduct, assumed only the risks naturally incident to riding in a precarious position on a high speed motorboat; he did not assume the added risk of negligent operation. Isaacson v. Jones, supra. However, the burden of proof is upon libelant to show in what respect respondent was negligent and the court cannot conclude that the burden has been carried. There is no substantial evidence that St. Jovite did, in fact, make a sharp turn at a high rate of speed. On the contrary, the testimony of the witnesses indicates that the turn was a gradual one. The fact that St. Jovite was able to stop the boat in a distance sufficiently short that Scheiner, in his gravely injured condition, was able to swim to the boat unaided, indicates that its speed was not excessive. This being so, the facts do not establish that a situation existed in which libelant was entitled to a warning. There is no basis for a finding that respondent's operation of the boat was anything other than reasonable and prudent, the risks of which the libelant assumed. The court must hold that libelants have not shown, by a preponderance of the evidence, that respondents failed in their duties. The libel is dismissed.

Respondent will file findings of fact and conclusions of law in accordance with the foregoing.