390 P.2d 303

**George H. STUCHBERY and Gladys Stuchbery, Plaintiffs-Appellants,**

v.

**Clifford HARPER, Kent Harper and Michael Holliday, Defendants-Respondents.**
**No. 9273.**

Supreme Court of Idaho.

March 2, 1964.

Rehearing Denied April 1, 1964.

Clemons, Skiles & Green, Boise, for appellants.

Elam, Burke, Jeppesen & Evans, Boise, for respondents.

**16**

TAYLOR, Justice.

July 27, 1961, two young couples, Kent Harper, Jean Terry, Michael Holliday and Linda Stuchbery, engaged in boating and water skiing on Lake Lowell in Canyon County. The boat used was owned by defendant (respondent) Clifford Harper, father of defendant Kent Harper, and at the time of the accident, hereinafter described, was being operated by defendant (respondent) Michael (Mike) Holliday. The boat was sixteen feet long, with a seventy-five-inch beam, and was propelled by an eighty horsepower outboard motor. The steering wheel, throttle and other controls were located up front in the cockpit. The back seat was located immediately in front of the motor, and the front seat immediately back of the cockpit. The backrests of the front seat were divided by a passageway in the center. The tops of the front seat back-rests were flat, slightly arching downward from the center passageway to the gunwales on each side, and were level or flush with the gunwales.

The operator Holliday was in a semi-standing position with his right foot on either the floor or the base of the front seat, his left foot against the throttle lever on the left side of the cockpit, and he was "braced" in the corner against the left side of the boat and the back of the front seat, with one hand on the steering wheel. Jean Terry was sitting immediately back of Holliday on the flat top of the left front seat back-rest. Linda Stuchbery was sitting on the flat top of the right front seat back-rest. Both girls were facing the rear of the boat, watching Kent Harper, who was being drawn on a water ski behind the boat. The boat was moving at about twenty-five miles per hour. On being advised that Kent had fallen into the water, Mike turned the boat sharply to the left for the purpose of going back to pick up the fallen skier. The wheel "spun out" of Mike's hand. There was a "lunge" or a "sudden stop." Linda Stuchbery fell into the water and was killed by the propeller. The Terry girl was thrown into the bottom of the boat and the operator was thrown into the back of the boat up against the motor.

Plaintiffs (appellants) father and mother of Linda Stuchbery, brought this action to recover damages occasioned by the death of their daughter, who at the time was 17 years of age. Pursuant to stipulation the action was dismissed as against Kent Harper. Trial resulted in a verdict and judgment in favor of defendants, from which plaintiffs brought this appeal.

By their first assignment of error plaintiffs contend the trial court erred in instructing the jury that contributory negligence was a defense available to defendants

in this case, on the ground that there was no substantial evidence of contributory negligence on the part of the deceased. The evidence that Linda was sitting on top of the back of the right-hand front seat is without dispute. The other girl, Jean Terry, testified that Linda's right foot was in the boat and her left foot was over the side, and she marked with "A" on defendants' exhibit 24 [1] the place where she was sitting, and with an "X" where Linda was sitting, and with a "Y" where she thought Linda's leg was over the side. We have added the same markings on exhibit 30.

"A   I can't say right where her leg was. It was over the side somewhere.

"Q   Could you tell her leg was over the side?

"A   Yes.

"Q   Now the seat that you have marked X is on the right side of the boat; is that correct?

"A   Yes.

"Q   Which way would she have been facing?

"A   The back of the boat.

"Q   Toward the motor.

"A   Yes.

"Q   And toward the water-skier.

"A   Yes.

"Q   And you say the one leg was in the boat and the other one was over the side of the boat.

"A   Yes.

"Q   With reference to this seat, Jean—is this the boat (indicating)?

"A   Yes.

"Q With reference to this seat, do you know whether or not that seat is smooth with the side of the boat?

"A It sits flush against the boat. It is built right into the boat.

"Q Was she in that position just before Kent fell?

"A Well, when I looked she was, but I didn't look at her right before the accident happened.

"Q But that was the position she was in the last you saw of her.

"A Yes.

"Q How long was that before the turn?

"A Just a few minutes. We had just been sitting there as long as Kent was ski-ing.

"Q And she had been in that position.

"A Yes."

On cross-examination the witness was asked:

"Q Now I believe you stated that —I don't want to misquote you, Jean. As I recall you said some statement that just before the accident occurred or just about the time of it, you weren't sure where Linda was sitting, but she had been in that position, I think you said, a few minutes before. Is that your statement?

"A Right before the accident, yes; but I was watching Kent and he had fallen and I wasn't looking right at Linda at the time."

Appellants urge this testimony shows that Jean Terry did not observe Linda in a position of peril immediately before the accident; but rather saw her in that position several minutes before.

" 'All reasonable inferences drawn by the triers of the facts from the evidence will be sustained on review.' " Smith v. University of Idaho, 67 Idaho 22 at 31, 170 P.2d 404. Also see: Sellars v. Sellars, 73 Idaho 163 at 164, 248 P.2d 1063.

Even though it be speculated that she had withdrawn her foot from over the side, the evidence would still justify a conclusion that she was perched atop the seat backrest when the boat went into the turn.

The evidence further shows that Linda had been out boating frequently over a period of two years, both in the Harper boat and in one owned by her father, and that she was a good swimmer and skier. Three witnesses, including her mother and father, testified that Linda had been warned of the danger of sitting in the position she was occupying on the occasion of the accident. The evidence was sufficient to support a finding of contributory negligence on the part of plaintiffs' decedent.

Plaintiffs also contend that contributory negligence was not available to defendants as a defense because of the provisions of I.C. § 39–2516, to wit:

"No person operating a motorboat of 18 feet or less in length shall allow any person to ride or sit on either the starboard or port gunwales thereof or on the decking over the bow of the vessel while underway unless such motorboat is provided with adequate guards or railing to prevent passengers from being lost overboard. * * * "

It is urged that this statute was enacted to protect a class of persons who are unable to exercise self-protective care; that an action by one who is a member of the class intended to be protected by the statute, for an injury arising out of a violation of the statute, is not barred by contributory negligence of the person injured; that it was the intention of the legislature to place the burden of protecting passengers upon the operator of a boat and to relieve the passengers from a charge of contributory negligence. The rule sought to be invoked is stated in 2 Restatement of Torts, § 483, as follows:

"If the defendant's negligence consists in the violation of a statute enacted to protect a class of persons from their inability to exercise self-protective care, a member of such class is not barred by his contributory negligence

from recovery for bodily harm caused by the violation of such statute."

Statutes given such effect are illustrated by child labor, and age-of-consent statutes, enacted for the protection of children— see comment, 2 Restatement of Torts, pp. 1263, 1264, and various safety statutes enacted for the protection of employees. Dart v. Pure Oil Company, 223 Minn. 526, 27 N.W.2d 555, 171 A.L.R. 885, Annotation p. 894; Koenig v. Patrick Construction Corporation, 298 N.Y. 313, 83 N.E.2d 133, 10 A.L.R.2d 848, Annotation p. 853. We do not think our statute should be so construed. Section 39–2530 of the same act provides:

"Violation of any of the sections of this act resulting in injury to persons or damage to property shall constitute prima facie evidence of negligence."

Thus, the legislature has made violation of the statute presumptive negligence, which may be rebutted, and not negligence per se. Passengers in a boat have little or no control over its operation. However, those who are mature, and especially those who are experienced, are able to occupy a position of comparative safety in the boat. They are able to exercise self-protective care, and are therefore subject to a charge of negligence, when they sit upon, or on a level with, the gunwales or bow, unprotected by a railing, or other barrier, to prevent their being lost over-

board. Stern v. Franklin, 290 Mich. 467, 287 N.W. 880; Tipton v. Day (Ohio App.) 154 N.E.2d 174; Byrd v. Belcher, 203 F. Supp. 645 (E.D.Tenn.1962); Scheiner v. St. Jovite, 180 F.Supp. 452 (N.D.Cal.1960); The America, 35 F.Supp. 413 (S.D.N.Y. 1940); Isaacson v. Jones (9th Cir.) 216 F.2d 599.

■ Plaintiffs also contend the court erred in repeated reference to the defense of contributory negligence in its instructions to the jury, and that the jury could have been misled thereby, citing Addy v. Stewart, 69 Idaho 357, 207 P.2d 498.

Instruction No. 4 stated the claims and the contentions of the respective parties as alleged in their pleadings, including the defense of contributory negligence.

Instruction No. 11 defined contributory negligence and informed the jury that a person, or the heirs of a person, injured or killed through the negligence of another, could not recover damages if the injury or death was due in whole or in part to negligence on the part of the injured person.

No. 13 advised the jurors that if they found the deceased was contributorily negligent, the plaintiffs could not recover.

No. 14 advised the jurors that they could not render a verdict upon a comparison of negligence as between the parties, on the ground that one was less negligent than the other, and that if negligence on the part of one claiming damages contributed as a proximate cause to the jury, no damages could be awarded.

No. 16 defined "preponderance of evidence" and applied the rules of "burden of proof" and "proximate cause" to the issues, including the defense of contributory negligence.

No. 18 stated the issues to be determined by the jury in detail, in the form of questions and answers, including the effect of finding contributory negligence on the part of deceased.

■ In explaining and clarifying the issues and defining terms in an action involving negligence, contributory negligence, proximate cause, and burden of proof, some repeated reference to these terms and issues is necessary. Kahan v. Pure Oil Co., 186 Okl. 493, 98 P.2d 894; Skaggs v. Gypsy Oil Co., 169 Okl. 209, 36 P.2d 865; 88 C.J.S. Trial § 340, pp. 910, 911, and § 346. In his instructions the trial judge should avoid unnecessary repetition and make the instructions as brief and concise as possible. However, clarity is of paramount importance and is not to be sacrificed to brevity. ˙

■ Plaintiffs contend that the giving of instruction No. 14, ruling out a verdict based upon comparative negligence, was unnecessarily repetitious in view of other

instructions advising the jurors that they could not return a verdict for the plaintiffs if they found that plaintiffs' decedent was contributorily negligent. No contention was made that this case was governed by admiralty law, and the instruction was a correct statement of applicable state law. Moreover, in this case we cannot say that the court was not justified in warning the jurors against returning a verdict for the plaintiffs based upon a comparison of the negligence of the respective parties. The negligence of the operator of the boat was so patent and of such a nature that the jury may have been tempted to disregard or minimize any negligence on the part of plaintiffs' decedent.

Plaintiffs assign error in the refusal of the court to give their requested instructions Nos. 2, 3, 4 and 5.[2]

Request No. 2 is based upon I.C. § 39-2510, defining the crime of reckless operation of watercraft. The request tended to impose upon plaintiffs the burden of establishing a higher degree of negligence than the law required, and although plaintiffs could not have complained of that fact had the request been acceded to, the refusal to give the instruction was not erroneous. Moreover, plaintiffs did not prosecute the action on the theory of gross negligence, or reckless disregard.

Request No. 3 is apparently based upon I.C. § 39-2518(c), which reads:

"(c) All motorboats having in tow or otherwise assisting a person on water skis, aquaplane or similar contrivance, shall be operated in a careful and prudent manner and at a reasonable distance from persons and property so as

---

2. "No. 2. You are charged that under the laws of the State of Idaho any person who shall operate any boat in such manner as to endanger life or limb or damage the property of any person shall be guilty of reckless operation of the boat, and if you find that Michael Holliday was guilty of reckless operation of the boat with the resulting death to Linda Stuchbery, then such acts shall constitute prima facie evidence of negligence.

"No. 3. You are charged that under the laws of the State of Idaho all operators of motor boats having in their control a person water skiing shall operate in a careful and prudent manner so as to not endanger any life or property of any person and if you find that Michael Holliday did not operate the boat

in such a manner and did endanger the life of Linda Stuchbery, then such acts of Michael Holliday shall constitute prima facie evidence of negligence.

"No. 4. Every operator of a boat upon the waters of the State of Idaho is charged with the duty of so driving that he has the boat under control at all times and he shall not abruptly turn or change the direction of travel of the boat without reducing speed and until he first determines that such turn or change in direction can be safely made.

"No. 5. It is the duty of any operator of a boat upon the waters of the State of Idaho to warn his passengers prior to any abrupt change in direction of travel and to see that they are safely seated before such change in direction is made."

not to endanger the life or property of any person."

Defendants contend this statute is intended for the protection of persons and property in the vicinity of the boat and skier, and is not applicable to persons in the boat so to be operated. It is not necessary here to determine that question. The instructions given by the court defining negligence and ordinary care, together with instructions 8, 9 and 12 [3] sufficiently covered the subject matter of the requested instructions numbers 3, 4 and 5.

In support of requests Nos. 4 and 5 plaintiffs cite Isaacson v. Jones (9th Cir.) 216 F.2d 599, Petition of Liebler (W.D.N.Y. 1937) 19 F.Supp. 829; Parmelee v. Hiller, 129 Conn. 489, 29 A.2d 586, and the note in 63 A.L.R.2d at 355. The courts in those cases found such duties were owed by an operator of the boat to his passengers by reason of the facts and circumstances shown by the evidence in those particular

cases. We have no statute, nor rule of decision, imposing such duties, in all cases, and under all circumstances. It was for the jury to determine the facts, and from the facts to determine whether the standard of due care, as defined by the court, imposed such duties upon the operator in this case. The requests tended to invade the province of the jury and were properly refused.

Plaintiffs assign as error the admission of testimony of the witness Padfield as follows:

"Q Now, Mr. Padfield, do you have an opinion as to whether or not, in making a turn with that boat, any person who is inside the boat could fall out of that boat in the turn?

"A Yes, sir, they could."

Objection that proper foundation had not been laid was overruled. The witness had qualified as an expert in equipping, maintaining, operating and racing of outboard

---

3. "No. 8. You are charged that under the laws of the State of Idaho no person shall operate any boat on the waters of the State of Idaho in such a manner as to endanger life or property. A violation of this rule is prima facie evidence of negligence.

"No. 9. It was the duty of the defendant Michael Holliday, before and at the time of the occurrence, to use ordinary care for the safety of Linda Lee Stuchbery.

"No. 12. The law presumes that Linda Stuchbery, now deceased, at the time of and immediately preceding the accident

here in question, was exercising ordinary care and was obeying the law.

"These presumptions are a form of prima facie evidence and will support findings in accordance therewith in absence of evidence to the contrary. When there is other evidence that conflicts with such presumption it is your duty as jurors to weigh that evidence against the presumption, and any evidence that may support the presumption, to determine which, if either, preponderates. Such deliberations, of course, shall be related to and be in accordance with instructions on the burden of proof."

motorboats. He had test run the Harper boat on Lake Lowell about a week before the trial; and described its characteristics as to construction and operation. He testified the test was conducted in the evening and the water was "fairly smooth;" a breeze "had been coming in from the southeast corner, but there was very little." On cross-examination he testified he was not towing a skier, nor dragging a ski rope. Mike Holliday had testified that on the afternoon of the accident "there was a slight breeze in the afternoon" but "there wasn't that evening." The accident occurred in late afternoon. Plaintiffs call attention to the want of evidence as to whether there were others in the boat with the witness at the time of the test run.

Experimental evidence may be admitted in the discretion of the trial judge.

"It was not necessary that they [the conditions] should in all respects have been identical; and the objection to such comparative evidence is not addressed to its admissibility but to its weight. * * * The similarity of the circumstances and conditions must be left to the sound discretion of the trial court, and determined by him, subject to review only for abuse." Kelly v. Troy Laundry Co., 46 Idaho 214, at 222, 267 P. 222.

If the trial judge determines that the conditions are sufficiently similar so that the evidence will not mislead, but will assist, the jury in an intelligent, understanding consideration of the issues, the evidence should be admitted. Beresford v. Pac. Gas & Elec. Co. (1955) 45 Cal.2d 738, 290 P.2d 498, 54 A.L.R.2d 910; Shepherd v. State (Okl.Cr.App.) 300 P. 421; State v. Riley, 126 Wash. 256, 218 P. 238; Horn v. Elgin Warehouse Co., 96 Or. 403, 190 P. 151; Rodgers v. State, 93 Tex.Cr. 1, 245 S.W. 697; Smith v. Grange Mut. Fire Ins. Co., 234 Mich. 119, 208 N.W. 145; Guinan v. Famous Players-Lasky Corp., 267 Mass. 501, 167 N.E. 235; Norfolk & W. Ry. Co. v. Henderson, 132 Va. 297, 111 S.E. 277. We find no abuse of discretion in the admission of the testimony complained of.

The assignment that the court erred in denying plaintiffs' motion for a new trial presents the same issues above considered.

Judgment affirmed.

Costs to respondents.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.