326 P.2d 381

Albert A. FUCHS, doing business under the
firm name and style of "Fuchs Realty
Company", Plaintiff-Appellant,

v.

Oliver LLOYD and Mary Alice Lloyd, hus-
band and wife, and William G. Hep-
worth, Defendants-Respondents.

No. 8563.

Supreme Court of Idaho.

June 6, 1958.

Vernon Daniel, Payette, Donart & Donart, Weiser, for appellant.

Yturri & O'Kief, Ontario, Or., Z. Reed Millar, Boise, for respondent Hepworth.

Caldwell & Whittier, Pocatello, R. J. Dygert, Payette, for respondents Lloyd.

McQUADE, Justice.

Albert A. Fuchs, doing business under the firm name of Fuchs Realty Company, who is hereinafter referred to as appellant, brought this action against Oliver Lloyd and Mary Alice Lloyd, husband and wife, who are hereinafter referred to as Lloyd, and against William G. Hepworth, who is hereinafter referred to as respondent, for a real estate broker's commission in the sum of $4,000 for the sale of real property. To the complaint, Lloyd cross-complained and asked for the earnest money paid by the respondent to the appellant, which had been deposited with the clerk of the district court by appellant. The respondent cross-complained against both Lloyd and appellant for the return of the $10,000 earnest money.

The district court after trial rendered a judgment for appellant against Lloyd in the amount of $4,000 for respondent and against Lloyd for the $10,000 deposited with the clerk of the court, and against Lloyd's contention that he was entitled to damages for the breach of the contract. Appellant appeals from that portion of the

judgment that he take nothing against respondent and that respondent recover the $10,000 held by the district court, and from the whole of said judgment.

On November 7, 1953, Ellis A. White, a real estate salesman for the appellant, secured an employment contract from Lloyd for the sale of the Lloyds' cattle ranch, the descriptive information concerning the ranch contained in the contract having been furnished by Lloyd, the husband. Among other information listed upon the contract form was a section pertaining to the size of the property. This section showed 1100 acres total, 600 acres cultivated and the balance pasture; also included were two items, 660 acres irrigated and 450 acres not irrigated.

Ellis White, in addition to being a salesman for appellant, did business as Northwestern Sales Management Service. On November 9, 1953, an auction was held at the Lloyd ranch, whereat all of the real and personal property was to be sold. In order to induce prospective buyers of the property to be present at the auction, White caused a large advertisement to be placed in the Ontario Argus-Observer, Ontario, Oregon. This ad represented the ranch to be 1100 acres in size, consisting of 800 acres of deeded land and 300 acres of riparian land, and further that 600 acres were in row-crop, hay, grain, and tame pasture, and that 500 acres were in native pasture. Respondent read the advertisement, and, induced thereby, visited the Lloyd ranch at the time of the auction, but did not participate in bidding on the realty.

Respondent, his son, Ellis White, and Chenault, an auctioneer, two or three days before the signing of an earnest money agreement, visited the ranch and made a cursory tour of the premises. There is a conflict in the evidence as to whether two small parcels of property were represented by White and Chenault as being part of the ranch.

Generally, all of the land between the Payette River and Big Willow Creek, which join on the westerly end, and a county road on the easterly side of the property, make up the Lloyd ranch. The northerly boundary is generally steep cliffs, with a fence line running along the ridge line. Parallel and near the base line of this high cliff runs a creek known as Big Willow Creek. The length of the ranch lies easterly and westerly for a distance of approximately two miles. At either end of the elongated property there were several small pieces which are part of the dispute and which did not belong to the ranch. The land on the northerly side of the ranch, between Big Willow Creek and the fence line on the bluffs, was not included in the deed prepared by Lloyd, and comprised an area of approximately 86 acres. Respondent maintains this area was not represented by the real estate salesman or Lloyd himself as being part of the ranch.

On the southerly side there were approximately 17 or 18 acres of cultivated land which were owned by a rancher on the other side of the river.

The 17 or 18 acres of land situated on the southerly side of the ranch, belonging to the neighbor across the Payette River, were not enclosed by a fence or other means which might signify the land was other than part of the larger acreage.

After respondent visited the premises with Ellis White, respondent, with White, Lloyd, and Blair Van Slyck, made a trip to Salt Lake City, Utah, relative to the exchange of a bowling alley for the down payment on the ranch, and in addition, to discuss other financing.

Subsequent to Lloyd's and respondent's returning from Salt Lake City, the appellant caused to be drawn and signed by all of the parties, on the sixteenth day of November, 1953, an earnest money receipt for the sale and purchase of the Lloyd ranch. The earnest money receipt appears to be a standard form used in the State of Oregon, which does not have community property law. It appears on the face of the instrument that neither the signature of Mr. or Mrs. Lloyd was acknowledged. The description of the property was not by township and section, but was by general description as follows:

" * * * The Oliver Lloyd's Island Ranch formerly known as the triangle Land and Livestock Co. Ranch * * * for the sum of One Hundred Sixty One Thousand and no/100 Dollars * *."

Respondent, under terms provided in the earnest money receipt, entered into possession of the premises, and while living in a tenant house situated thereon proceeded to disc about 200 acres of land. During this period of time, Lloyd continued to occupy the principal farm house situated on the property.

About one week after the respondent commenced his farming operations, he received a call from Otis Smith, the owner of the property on the southerly side of the Payette River, at which time Smith called to respondent's attention that a small portion of his ranch of 17 to 18 acres lay on the north side of the Payette River, and pursuant to an agreement had been farmed by Lloyd.

Upon learning that the Lloyd ranch did not include that portion owned by Otis Smith, the respondent ceased his farming operations and advised the Fuchs Realty Company that a dispute had arisen concerning the acreage of the property. Respondent caused a survey of the premises to be made, and attempted to negotiate a compromise of his differences with Lloyd. The compromise offered by respondent was on the basis that the ranch consisted of 800 to 900 acres; that he would purchase the property at a $10,000 reduction, and that

he had in mind a purchase price of about $140 or $145 an acre. These offers were refused by Lloyd, who on December 7, 1953, sold the entire property for $125,000 to his father-in-law.

The trial judge found the property that had been conveyed to Lloyd was represented to be 1064.245 acres, less certain exceptions; that the property which had been represented by White to the respondent as being property to which Lloyd had title and could make a conveyance thereof, was an area of 895.45 to 900.845 acres, terminating in a deficiency of about 200 acres less than Lloyd had represented the ranch to contain.

Appellant's 15 assignments of error will be consolidated into six.

Appellant assigns as error the admission of the newspaper advertisement as evidence and the finding that the respondent relied upon information in the advertisement.

■ At the time respondent offered the publication as evidence, there was no objection to its admissibility, and it was therefore properly admitted in evidence by the trial court. The attorney for appellant was present in the courtroom and should have made his objection at that time; he cannot make his objection for the first time on appeal. Webster v. Potlatch Forests, 68 Idaho 1, 187 P.2d 527, 536, disposes of this question as follows:

"We direct attention to Marysville Mercantile Co. v. Home Fire Insurance Co., 21 Idaho 377, 395, 121 P. 1026, 1033, where we held: 'This court has so often held that it will not consider or review a question presented to this court for the first time, unless it be a question of jurisdiction, or that the pleading does not state a cause of action, that it seems almost unnecessary to cite the decisions, but the principle is well recognized in the following authorities' (citing cases).

"Further, again, in Grant v. St. James Mining Co., Ltd., 33 Idaho 221, 222, 191 P. 359, we pointed out: 'The rule is well settled that a party cannot avail himself of a defense for the first time in the appellate court, nor will a question not raised in the trial court be considered on appeal.' Recent cases adhering to the rule are: Garrett Transfer & Storage Co. v. Pfost, 54 Idaho 576, 585, 33 P.2d 743; Curtis v. Pfost, 53 Idaho 1, 21 P.2d 73; Johnson v. Diefendorf, 56 Idaho 620, 633, 57 P.2d 1068."

■■ There was ample evidence from all of the witnesses to support the conclusion of the trial judge in finding the respondent relied upon the acreage representations as set out in the auction advertisement. Under our rule, there being sufficient substantial and competent evidence to sup-

port its findings thereon, and the findings not being clearly against the weight of the evidence, the findings of the trial court are binding on this Court and will not be disturbed. Howay v. Howay, 74 Idaho 492, 264 P.2d 691; Jensen v. Chandler, 77 Idaho 303, 291 P.2d 1116; Anselmo v. Beardmore, 70 Idaho 392, 219 P.2d 946; Ryan v. Day, 74 Idaho 159, 258 P.2d 1146.

■ Another assignment of error concerns the earnest money receipt. Appellant urges the trial court erred in concluding the receipt was void for lack of acknowledgment of Mrs. Lloyd's signature. The agreement to sell is as follows:

"November 16, 1953

"I hereby approve and accept the sale of above described property and the price and conditions as set forth in above contract, and agree to furnish evidence of title as above provided; also the said deed when stated.

Address Star Rt. Pay-   Seller Oliver Lloyd
ette, Idaho
Phone ——————— X Mary Alice Lloyd

Under the terms of this agreement, it must be concluded that it is a contract to convey community real property. I.C. sec. 32–912 provides:

"The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate. But he can not sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered * * *."

In Idaho the rule has been long established, and was reiterated in the case of Thomas v. Stevens, 69 Idaho 100, 203 P.2d 597, 599, that the contract must be signed and acknowledged by both husband and wife. In that case this Court said:

"It is the long established law of this state that a contract to convey community real property which is not signed and acknowledged by both husband and wife is void. Childs v. Reed, 34 Idaho 450, 202 P. 685; McKinney v. Merritt, 35 Idaho 600, 208 P. 244; Hart v. Turner, 39 Idaho 50, 226 P. 282; Elliott v. Craig, 45 Idaho 15, 260 P. 433; Burnham v. Henderson, 47 Idaho 687, 278 P. 221; Shepherd v. Dougan, 58 Idaho 543, 76 P.2d 442; Intermountain Realty Co. v. Allen, 60 Idaho 228, 90 P.2d 704, 122 A.L.R. 647; Little v. Bergdahl Oil Co., 60 Idaho 662, 95 P.2d 833; Durant v. Snyder, 65 Idaho 678, 151 P.2d 776; Hancock v. Elkington, 67 Idaho 542, 186 P.2d 494."

In the case of Knudsen v. Lythman, 33 Idaho 794, 200 P. 130, 132, this Court said:

"Appellant has also sought to avoid the consequences of the rule by the fact that this mortgage was executed in the state of Washington. This contention is wholly without merit, for it is settled law that every instrument affecting the title to real property is subject exclusively to the laws of the state or government within whose jurisdiction the real property is situated. * * *"

In elaborating on Knudsen v. Lythman, the Court said in McKinney v. Merritt, 35 Idaho 600, 208 P. 244:

"In the case of Knudsen v. Lythman, 33 Idaho 794, 200 P. 130, it was held that an acknowledgment by the wife, as provided by law, is essential to the validity of a mortgage of community property, and we think the same rule applies where there is a contract of option to sell community property. * * *"

The Idaho Court is quoted in 15 C.J.S. Conflict of Laws § 20 c., p. 943:

"The formal requirements of instruments affecting the title to immovable property are usually so closely interwoven with the essential requirements of such instruments as to affect their operation on the title to such property, and hence are controlled by the law governing transfers of such property generally—the lex rei sitae. * * *" (Citing Knudsen v. Lythman, supra.)

Appellant next contends the trial court's conclusion of law number III was wrong when the trial judge found:

"That there was no fraudulent misrepresentation upon the part of the defendant Oliver Lloyd as to the acreage contained within the area, but that evidence supports the conclusion that he was guilty of negligently and carelessly representing and permitting to be represented what was not true and when the truth was easily accessible to him; that such representations were of material fact; that they were false; and that they were relied upon by defendant Hepworth."

Lloyd testified that he based his conclusion as to the size of the ranch upon the representations of another rather than making an independent search for facts which were readily available by a search of the records or through a survey of the premises. Lloyd stated to Ellis White that the ranch contained 1,100 acres of land, and Lloyd knew, or should have known that this representation would be made to prospective buyers, who in turn would rely upon such statement in computing the value of the ranch. Lloyd represented an acreage of which he did not have title and which

he could not convey. Under all the circumstances which appear from the evidence, the trial court was correct in concluding there was no fraud on the part of Lloyd, but that he was negligent and careless in advising White and respondent. See Summers v. Martin, 77 Idaho 469, 295 P.2d 265, 268:

> "This Court stated in Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347, 349, that if the seller did not know the location of the true boundary of the land, 'he should not have taken upon himself to point out the same, and to make a definite and positive representation concerning it and which the state of knowledge did not enable him to make with verity and correctness.' This Court further stated:

> " 'Even honesty in making a mistake is no defense as it is incumbent upon the vendor to know the facts.'

> "This holding was reaffirmed in Brooks v. Jensen, 75 Idaho 201, 216, 270 P.2d 425."

■ Appellant seeks a reversal on the grounds that the judgment was erroneous, and particularly because the trial court awarded the $10,000 earnest money to respondent. This specification of error has no merit. It is axiomatic that when the trial court concluded respondent was entitled to rescind the contract, he was at the same time entitled to return of his good faith money.

■ Another error assigned is that the trial court should have concluded that there was an agreement between appellant and respondent whereby respondent was to pay the commission. The agreement to pay a commission appears on the face of the earnest money receipt, and is as follows:

> "November 16, 1953 19—

> "I agree to pay forthwith to the above named broker a commission amounting to $4000.00 for services rendered in this transaction. In the event of a forfeiture of the deposit as above provided, the said deposit shall be paid to or retained by the broker to the extent of the agreed upon commission with residue to the seller. I authorize said broker to pay out of the cash proceeds of sale the expense of furnishing evidence of title, of recording fees and revenue stamps, if any, as well as any incumbrances on said premises, payable by me at/or before closing. I acknowledge receipt of a copy of this earnest money receipt bearing my signature(s) and that of the purchaser named above.

> "Seller Oliver Lloyd
> "X.  Mary Alice Lloyd"

There is no basis upon which the formation of a contract with respondent could

be had in this agreement because the agreement is between appellant and Lloyd.

Finally, the appellant for error relies upon the findings and conclusions of the trial court appertaining to the acreage subtracted, that this was not a sale in gross, that respondent had grounds upon which to base a rescission, and that the earnest money is to be returned to respondent. Each of the assigned errors is based upon the trial court's resolving conflicting evidence, which is unnecessary to relate. There was evidence introduced by all of the parties which is conflicting, and from all the evidence the trial judge made findings of fact and conclusions of law. There was substantial basis for those findings, and well applied principles of law uphold the conclusions reached thereafter. Under our rule, there being sufficient substantial and competent evidence to support its findings thereon, and the findings not being clearly against the weight of the evidence, the findings of the trial court are binding on this Court and will not be disturbed. See authorities, supra.

The judgment is affirmed.

Costs to respondent Hepworth.

PORTER, TAYLOR and SMITH, JJ., concur.

KEETON, C. J., concurs in the conclusion reached.