382 P.2d 792

**Dearold FOSTER, Plaintiff-Appellant,**

v.

**Frank H. THOMAS, Defendant-Respondent.**

No. 9289.

Supreme Court of Idaho.

June 7, 1963.

Petersen, Moss & Olsen, Idaho Falls, for appellant.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for respondent.

KNUDSON, Chief Justice.

This action was commenced by Dearold Foster, plaintiff-appellant, to recover damages from Frank H. Thomas, defendant-respondent, resulting from a collision which occurred at approximately eight o'clock A. M. on October 13, 1961, at the intersection of 17th Street and South Yellowstone Highway (hereinafter referred to as highway) in the city of Idaho Falls.

The highway extends in a north-south direction and 17th Street extends in an east-west direction. The juncture of these thoroughfares is best described as a "T" intersection, with 17th Street extending east of the highway through an underpass under a railroad. Bair's Service Station abuts the highway right of way on the west of this "T" intersection directly across the highway from the 17th Street intersection.

At the intersection the highway right of way was 83 feet wide. From the east right of way line to the east edge of the oiled highway surface was a distance of 12 feet; the entire area from that point westerly to and including the service station grounds was oiled hard-surfaced. The highway proper consisted of a 12 foot northbound traffic lane, a 14 foot left-turn bay and a 12 foot southbound traffic lane. The additional oiled surface on the west side of the traffic lanes extended approximately 336 feet north of the intersection to what is known as Crow Creek.

At the time of the accident a signal light was installed over the middle of the intersection displaying a flashing yellow or amber light to the traffic proceeding north and south on the highway and a flashing red light to the traffic approaching the highway at the intersection from east and west. A stop sign was in place directing traffic entering the highway from the east on 17th Street to stop.

Immediately prior to the accident appellant was driving a motorbike in a southerly direction approaching the intersection from the north. He intended to drive to the southernmost gasoline pump at the service station. At a point 16 feet east of the west right of way line appellant ran against the middle right side of respondent's panel truck causing him to suffer physical injuries and damage to his motorbike.

At the conclusion of the trial the jury returned a verdict in favor of appellant in the amount of $4,250.00 and judgment was regularly entered thereon. Thereafter respondent moved the court for an order setting aside the verdict and directing entry of judgment in favor of respondent pursuant to Rule 50(b), I.R.C.P., which motion was granted. This appeal is from the order granting said motion.

Appellant contends that the court erred in finding that the evidence, when viewed from the standpoint most favorable to appellant, established as a matter of law that

no recovery could be had by appellant upon any view which could be properly taken of the evidence, and the court erred in vacating the verdict and judgment and directing entry of judgment for respondent.

The court granted the motion upon two grounds (1) it was not proved that respondent was negligent and (2) that appellant was guilty of contributory negligence.

We shall first consider the trial court's conclusion that negligence on the part of respondent was not proved.

 It has been repeatedly held by this Court that upon a motion for a directed verdict or a motion for judgment notwithstanding the verdict each admits the truth of the adversary's evidence and every inference of fact which may be legitimately drawn therefrom. Hendrix v. City of Twin Falls, 54 Idaho 130, 29 P.2d 352; Stearns v. Graves, 62 Idaho 312, 111 P.2d 882; Smith v. Big Lost River Irrigation District, 83 Idaho 374, 364 P.2d 146; Jack v. Fillmore, ante, p. 36, 375 P.2d 321.

A version of the facts favorable to appellant which may be legitimately drawn from the evidence is as follows: When appellant was approximately at Crow Creek he looked back and observed an automobile (hereinafter referred to as the Burggraf car) following him a short distance behind. When within about 100 feet of the intersection the Burggraf car was driven alongside appellant on his left. As the two vehicles proceeded toward the intersection the automobile ultimately obstructed appellant's view of the area where the westbound traffic on 17th Street approaches and enters the highway. Appellant at no time saw respondent until "just seconds before the collision." Appellant testified that he was traveling about 25 miles per hour when he crossed Crow Creek and had slowed down to approximately 15 miles per hour at the time of the accident.

Mr. Burggraf testified that appellant stayed even with him after he drove alongside the motorbike and was even with him at the time of the accident; that he (Burggraf) decelerated his car when about 100 or 150 feet from the intersection by taking his "foot off the gas to make sure that there would not be any trouble whatsoever insofar as my car was concerned." Mr. Burggraf further testified as follows:

"Q. And Mr. Foster stayed even with you?

"A. Yes.

"Q. Mr. Foster never did have a chance to get a clear view of this stop intersection?

"A. My car blocked him all the way through. I testified to that.

"Q. So he couldn't see Mr. Thomas under any circumstances?

"A. He couldn't—I don't believe he saw Mr. Thomas or could have seen

him until the—until a fractional second before the impact."

Respondent approached the highway traveling west on 17th Street. At the intersection he was faced with a stop sign and a flashing red traffic light. While stopped at the intersection respondent observed the Burggraf car in the vicinity of Crow Creek, but did not see appellant's motorbike or any other traffic approaching from that direction. Respondent admits that there was nothing whatever to obstruct his view of the traffic which at that time was approaching the intersection from the north. Respondent entered the intersection and proceeded westerly to a point 16 feet east of the west highway right of way line before the accident happened. As concerns the accident respondent testified as follows:

"Q. Now, how far do you say that you traveled after he struck the side of your pickup—the side of your panel truck?

"A. Well, possibly, three, four, five feet; something in that distance.

"Q. Now, had you applied your brakes before he struck you?

"A. Yes, I did.

"Q. Had you left any black marks where you applied your brakes?

"A. Yes. There were, I believe, some six feet, approximately, of skid marks shown. Mr. Ackerman's testimony

shows—or his report of the accident showed that.

"Q. (By Mr. Smith) Did you see the black marks?

"A. Yes, I did.

"Q. About how far were you from the point of impact when you first saw Mr. Foster, or how far before you were hit, how many feet?

"A. Oh, I would say possibly ten feet. That's an estimate.

"Q. And then you got your brakes on so you left black marks about six feet long?

"A. Yes."

Although there is some conflict as to how close respondent's car passed in front of the Burggraf car which was traveling at appellant's left toward the intersection, appellant testified as follows:

"Q. (By Mr. Moss) Now, did you—approximately how far back would you estimate in feet did Mr. Burggraf come up alongside you?

"A. Oh, probably a hundred, hundred and fifty feet.

"Q. A hundred, hundred and fifty feet back—

"A. (Interrupting) Right.

"Q. —along there when he came up alongside you?

"A. Yes.

"Q. Now, as you were proceeding along from Crow Creek toward the point of impact were there any obstacles to the vision of anyone located at the position of that stop sign on Seventeenth Street which would have obscured you from his vision?

"A. When I was preceding Mr. Burggraf there weren't any automobiles that would have blocked my vision of this intersection, and if there had been any automobile moving from that intersection, I would have seen it.

"Q. Well now, then, up to the time Mr. Burggraf came up alongside you did you detect any movement of any automobile from Seventeenth Street into the intersection?

"A. No sir.

"Q. When did you first become aware of the moving automobile of Mr. Thomas?

"A. Just seconds before the collision.

"Q. (By Mr. Moss) Approximately how many feet in front of the Burggraf vehicle did he pass with his vehicle?

"A. I would estimate about three feet, if that far.

"Q. (By Mr. Smith) What was that again?

"A. About three feet, if it was that far."

Under the provisions of I.C. § 49–729, it is required that every driver of a vehicle approaching an intersection indicated by a stop sign shall stop, and after having stopped shall yield the right of way to any vehicle which is approaching so closely on the roadway as to constitute an immediate hazard.

■ From the evidence introduced by the parties it is clear that the question as to whether respondent was negligent in failing to observe appellant earlier and whether respondent failed to yield the right of way as required by I.C. § 49–729 became questions for determination by the jury.

It is not pointed out in the record what evidence influenced the trial court in concluding that appellant was guilty of contributory negligence preventing recovery by him. There is no evidence or inference from any facts in the record that would sustain a finding that appellant exceeded the speed limits or was traveling at an excessive speed. Appellant testified that he was going 15 miles per hour immediately prior to the accident and respondent estimated appellant's speed at 20 miles per hour. Evidence as to the physical condition of the vehicles involved and their location, after the impact, is inconsistent with excessive speed on the part of appellant.

Respondent argues that appellant failed to keep a proper lookout and failed to keep his motorbike under proper control. Respondent does not point out in his argument just what he contends appellant should have done when, and after, the Burggraf car pulled up alongside of him.

Appellant admits that he did not have unobstructed view of the entire intersection and the approaches thereto while he traveled the last 100 feet immediately prior to the collision. Respondent testified that he first saw the Burggraf car at "about the Crow Creek Crossing", which is 336 feet north of the intersection. Appellant and Mr. Burggraf testified that appellant was ahead of the Burggraf car until they were approximately 100 or 150 feet from the intersection, yet respondent failed to see appellant until he was within 10 feet of where the collision occurred, and he admits that he then applied his brakes hard enough to cause black skid marks six feet long within the ten feet mentioned. The evidence favorable to appellant also shows that respondent barely missed the Burggraf car by three feet.

■ Under the provisions of I.C. § 49–729, it was the duty of respondent to yield the right of way to any vehicle which was approaching on the highway so closely as to constitute an immediate hazard. If appellant was observing traffic regulations as he proceeded to the intersection he was entitled to assume that anyone approaching or entering the same would comply with said statute. Coughran v. Hickox, 82 Idaho 18, 348 P.2d 724.

■ Respondent contends that the evidence clearly establishes that appellant violated the rules of the road by operating his motorbike off that portion of the highway ordinarily used for through traffic. In this respect appellant testified that while he was riding alongside the Burggraf car he was approximately 4 or 5 feet to the west of the car and gradually steered his motorbike to the right side of the highway preparatory to making a right turn off the highway to the service station pump. Consequently if the triers of fact believed appellant they would have been justified in concluding that he made a proper approach to make a right turn at the intersection. I.C. § 49–721 provides:

*"Required position and method of turning at intersections.*—The driver of a vehicle intending to turn at an intersection shall do so as follows:

"(a) Right turns.—Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway."

Although respondent argues that appellant was not traveling on that part of the highway designated "roadway" he urges that it is unnecessary to decide whether the collision occurred on the roadway. In this connection it should be noted that the jury was instructed as to the definition of "roadway" and "highway", "intersection" and "berm".

In this action the questions of negligence on the part of respondent and contributory negligence on the part of appellant were submitted to the jury under instructions which have not in any respect been questioned.

This Court has long adhered to the rule that where the minds of reasonable men might differ, or where different conclusions might be reached by different minds, the questions as to the existence of negligence or contributory negligence are questions for the jury. Wilde v. Hansen, 70 Idaho 8, 211 P.2d 153. A question of the existence of negligence or contributory negligence only becomes a question of law when the evidence is susceptible of no other reasonable interpretation than that the conduct of the injured party contributed to his injury and that because of his negligence and carelessness he did not act as a reasonably prudent person would have acted under the circumstances. Stowers v. Union Pac. R. Co., 72 Idaho 87, 237 P.2d 1041; Donovan v. Boise City, 31 Idaho 324, 171 P. 670. Under this rule, it is clear that the evidence in this case does not justify a conclusion that the existence of negligence or contributory negligence became purely a question of law. Some of the evidence is conflicting and different inferences and conclusions could be drawn therefrom, however, such conflicts were for the jury and not the court to resolve. There was sufficient evidence to justify the jury in finding as it did and under such circumstances the verdict should not be set aside. Daniels v. Campanello, 75 Idaho 475, 274 P.2d 998; Eckman v. Jones, ante, p. 10, 375 P.2d 180.

It cannot be said from the evidence introduced that appellant was guilty of contributory negligence as a matter of law or that there is no substantial competent evidence to sustain the verdict. The ruling of the court in granting respondent's motion setting aside the verdict and granting judgment to respondent was erroneous. The judgment is reversed and the cause remanded with instructions to the trial court to reinstate the judgment originally entered upon the verdict. Costs to appellant.

McQUADE, McFADDEN, TAYLOR and SMITH, JJ., concur.