402 P.2d 389

**Mary CROSBY, Plaintiff-Respondent,**

**v.**

**Keith E. PUTNAM, Defendant-Appellant.**

**No. 9283.**

Supreme Court of Idaho.

May 24, 1965.

Roberts & Poole, Boise, for appellant.

Gigray, Boyd & Downen, Caldwell, for respondent.

KNUDSON, Justice.

This action was commenced by respondent, Mary Crosby, seeking to recover judgment against appellant, Keith E. Putnam, for the sum of $1,207.00 for money allegedly loaned to appellant by respondent. Appellant answered denying all allegations of the complaint, and filed a counterclaim thereby seeking judgment against respondent in the sum of $1,700.00 allegedly due from her under an oral agreement for board and room furnished by appellant. Respondent denied all allegations of said counterclaim. Trial was had before the court sitting without a jury, following which judgment was entered in favor of respondent and against appellant in the sum of $1,124.00. This appeal is from said judgment.

Under respondent's proof submitted to the trial court, the total amount alleged to be due from appellant ($1,207.00) was comprised of six separate loans in the following stated amounts, to-wit: $900.00, $112.00, $112.00, $50.00, $25.00, and $8.00. The

court denied recovery of the three amounts last mentioned and rendered judgment for the total of the remaining amounts concerning which appellant contends that there is no substantial competent evidence to support.

Under appellant's first assignment of error it is contended that "the court erred in allowing respondent to introduce as evidence the contents of a compromise and settlement agreement between appellant and respondent's daughter." The following additional facts are pertinent to a consideration of this contention.

The record discloses that appellant and Rosa Putnam, respondent's daughter, intermarried on December 26, 1939; that from and after June 21, 1960 they lived separate and apart and were divorced by decree dated May 24, 1961; that under date of July 27, 1960 a "Separation and Property Division Agreement" (admitted in evidence as Plf. Exh. 2), wherein appellant and his said wife are designated as parties, was executed and acknowledged by appellant. In this instrument the indebtedness to respondent is acknowledged by the following quoted language:

"Husband assumes and agrees to pay the current accrued household bills and accounts of the parties hereto in the amount of $250. and agrees to indemnify and save harmless Wife of any liability therefor.

"In addition, Husband assumes and agrees to pay forthwith to Mary Crosby, mother of Wife, the sum of $1,207, which is recognized by the parties hereto as an indebtedness owned by the community to the said Mary Crosby, and Husband agrees to indemnify and save harmless Wife of and from any liability in connection therewith."

Under date of March 10, 1961, another "Separation and Property Division Agreement" (admitted in evidence as Plf. Exh. 3), naming appellant and his said wife as parties, was executed by both of the parties thereto.

Appellant's said assignment of error does not specifically identify the agreement referred to. However, in his argument relating thereto reference is made to testimony concerning a settlement agreement that was discussed between the parties on or about July 27, 1960 and since plaintiff's exhibit 2 is dated July 27, 1960, we shall assume that it is the agreement which is intended to be referred to in the assignment.

Said claim of error is without merit. The record shows that the agreement (Plf. Exh. 2) was admitted in evidence without formal proof and without objection at a pretrial conference held December 14, 1961, at which conference appellant was represented by his attorney. Likewise no objection was made to said exhibit when it was being identified and referred to during the

**48**

trial. The following is an excerpt from the records made during the direct examination of Rosa Putnam while she was being interrogated relative to an admission made by appellant in the presence of herself, appellant and his attorney, and respondent's attorney, concerning the amount owing respondent. The testimony contained in this excerpt is also the first testimony offered during the trial concerning the contents of Exhibit 2, to-wit:

"Q · What was stated?

"A It was stated that the debt was a legal debt and that it was agreed that he would pay it.

"Q Did he subsequently acknowledge that debt in a written instrument which contains his signature?

"A Yes.

"Q And when you are referring to that acknowledgment, are you referring to what has been admitted in evidence as Plaintiff's Exhibit No. 2?

"A Yes.

"Q Now with reference to what is Plaintiff's Exhibit No. 2, that particular agreement as originally drafted, provided for the immediate payment to your mother of this money, did it not?

"MR. ROBERTS: I am going to object to that, the instrument speaks for itself.

"THE COURT: Sustained."

The interrogation clearly stated that the exhibit had been admitted in evidence and no objection or motion was made regarding it. Notwithstanding the fact that the court's pretrial order, a copy of which was mailed appellant six days after the conference, specifically identified the exhibit and stated that it has been admitted in evidence, and the further fact that it was repeatedly referred to during the trial, no motion was ever made to strike the exhibit on any ground.

This court has consistently adhered to the rule that objections to evidence cannot be raised for the first time on appeal. Neff v. Hysen, 72 Idaho 470, 244 P.2d 146; Fuchs v. Lloyd, 80 Idaho 114, 326 P.2d 381; Darby v. Heagerty, 2 Idaho 282, 13 P. 85; Blue Note, Inc. v. Hopper, 85 Idaho 152, 377 P.2d 373; Goody v. Maryland Casualty Co., 53 Idaho 523, 25 P.2d 1045. In Carey v. Lafferty, 59 Idaho 578, 86 P.2d 168, this court said:

"By permitting the trial judge, without protest or objection, to make use of these papers in deciding the case and in disposing of the motion for a new trial, the right to object to them has been waived."

Under appellant's only other assignment of error the sufficiency of the proof to sustain the judgment is challenged. It is

hereinbefore noted that the court denied recovery of three of the alleged loans, which action on the part of the court is not appealed from, leaving only the claimed loans of $900.00, $112.00, and $112.00 to be considered on this appeal.

The evidence relating to the loan of $900.00 is in irreconcilable conflict. Respondent and her witness, Rosa Putnam, both testified that appellant personally requested respondent to loan him the money and in compliance with such request respondent transferred $900.00 to appellant by check drawn upon her account. Although the check was not produced in evidence, the testimony being that it had been lost, respondent's bank statement (Plf. Exh. 5) does establish that a withdrawal from her account in the amount of $900.00 was made on October 2, 1959. In this connection Mrs. Putnam, while being interrogated regarding said loan, testified as follows:

"Q  Can you relate to the court how that was incurred?

"A  It was incurred in the amount of $900 in one amount.

"Q  And when was that?

"A  That was sometime previous to October 2, 1959.

"Q  What year?

"A  1959.

"Q  And would you tell the court what you know about that $900 being lent by your mother to your husband?

"A  Well, I know he asked her to borrow it, she loaned it to him. You want to know why he borrowed it?

"Q  Do you recall the details of how that money was delivered?

"A  Yes.

"Q  To your husband?

"A  Yes, I do. He wanted to borrow the money, he called his brother in Portland to borrow money, he did not get it, he turned around and asked mother how much she had in her account, and she told him about $900, and he said 'Could I borrow it?' and she gave him a check and that is all there is to it."

Respondent's testimony regarding this item was substantially the same as that of Mrs. Putnam's and in answer to a question as to the whereabouts of the $900 check involved she testified:

"Q  Do you know where it is?

"A  No, it was in my dresser drawer, when I went to look for it—I was away—came back and looked for it and it was gone, I have no idea."

The record discloses that respondent was 84 years of age at the time of trial. The witness Mrs. Putnam also testified that the

purpose for which appellant borrowed the $900 was to purchase stock in the Waddell & Reed Co., by whom he was then employed. In connection with the $900 item the trial court summarized the evidence by the following quoted observations:

"The evidence does establish, however, that there was a withdrawal of $900 from plaintiff's bank account on October 2, 1959, (Plaintiff's Exhibit No. 5). The record further establishes that defendant purchased 200 shares of Waddell & Reed stock, the negotiations for the purchase commencing in September, 1959, and the purchase being completed on October 7, 1959, at a price of $4,700. * * * It must be further recognized that, apart from the defendant's explanation of where the money was obtained, and his denial, that $900 was borrowed from the plaintiff, the timing and details of the stock transaction as revealed in the relevant documentary evidence not only do not tend to rebut the plaintiff's claim but can be construed to substantiate it."

Referring to the two items of $112.00 each, the proof shows that the first check (Exh. B) was dated May 16, 1960, drawn payable to Home Federal Savings and Loan in the amount of $112.00, drawn by Rosa Putnam upon respondent's account at The Idaho First National Bank, concerning which account respondent and her daughter Rosa had joint authority. The second check (Exh. C) was dated July 15, 1960, drawn payable to the same payee, in the same amount and upon the same account.

Appellant denied that he had borrowed these amounts from respondent or that he had authorized his wife to do so. Rosa Putnam, his then wife, testified that each of these two amounts were borrowed from respondent for the purpose of making payment of monthly installments due on their home. Concerning these items the trial court stated in the memorandum decision, as follows:

"As to the two $112 items, it is sufficiently established by the evidence that these items were used to pay the regular monthly house payments on the home of the parties, although it is further established that they were incurred by the wife without any express consent on the part of the husband."

The trial court in substance concluded that appellant's wife had contractual capacity to borrow money with which to make mortgage payments on the family home and that the husband was liable therefor as one of the necessaries he is obligated to furnish. Edminston v. Smith, 13 Idaho 645, 92 P. 842, 14 L.R.A.,N.S., 871, is relied upon as authority for this conclusion. Although we do not consider it necessary herein to decide what Mrs. Putnam's contractual capacity was at the time said amounts were borrow-

ed, nevertheless the trial court's conclusion above mentioned is supported by Linton v. Linton, 78 Idaho 355, 303 P.2d 905, wherein this court said:

"While the husband and wife contract toward each other obligations of mutual respect, fidelity and support, Sec. 32–901, I.C., the primary duty rests on the husband, when able, by reason of the marital contract and operation of law to furnish the wife with the necessaries of life. [citing cases]

"Payment of the balance due on the mortgage on the home is also a primary obligation of respondent."

The hereinbefore quoted portion of the "Separation and Property Division Agreement" dated July 27, 1960 (Plf. Exh. 2) was properly given consideration by the trial court in deciding the issues involved. The evidence clearly discloses that the sum of $1,207.00 mentioned in plaintiff's exhibit 2 was composed of the six separate amounts stated in the second paragraph of this opinion, the first three of which were included in the judgment appealed from. This acknowledgment on the part of appellant of indebtedness to respondent when considered with the undisputed fact that appellant not only signed said agreement but also secured a cashier's check drawn payable to respondent in the sum of $1,207.00 and left it with his attorney to be applied in payment of the sum acknowledged to be due respon-

dent under the foregoing quoted provision of plaintiff's exhibit 2, is convincing evidence in support of respondent's claim. Appellant's explanation as to why he signed the agreement acknowledging the $1,207.00 debt was that he did so on the advice of his attorney and also if the debt were properly substantiated. The following quoted excerpt from the court's memorandum decision discloses the court's view of this evidence:

"Defendant contends, however, that he executed the original agreement with the assurance that the debt he assumed therein would be verified. Observation of the defendant while testifying gave the impression of a man who had had considerable experience in business affairs, was highly intelligent and who exercises independent judgment. It is difficult for me to conceive that a man of the defendant's apparent ability and characteristics would voluntarily recognize an indebtedness and agree to assume the same even to the extent of submitting a cashier's check to his attorney to cover the amount, if he was depending entirely on subsequent verification of the existence of the obligation and lacked knowledge of any basis in fact for the existence of the obligation. This, in my mind, weighs most strongly against defendant's apparent present position

that the whole claim was manufactured by the plaintiff and her daughter out of whole cloth and lends credence to plaintiff's testimony and evidence in support of her claim."

The evidence adequately supports the finding and judgment. Judgment affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.