436 P.2d 714

William **FAWCETT** and Ed LeDuc, **Plaintiffs-Appellants,**

v.

Harold **IRBY** and Sweets Candy Co., **Defendants and Third-Party Plaintiffs-Respondents,**

v.

**GOODFELLOW BROTHERS,** a Corporation, **Third-Party Defendant.**

No. 9994.

Supreme Court of Idaho.

Jan. 29, 1968.

Rehearing Denied Feb. 19, 1968.

**50**

Brown, Peacock & Keane, Kellogg, for plaintiffs-appellants.

Jeremiah A. Quane, Boise, Alden Hull, Wallace, for respondents.

E. L. Miller, Coeur d'Alene, for third-party defendant.

TAYLOR, Chief Justice.

About 4:30 p. m. July 14, 1964, a four-car collision occurred on U. S. Highway 10 approximately four-tenths of a mile west of the city limits of Kellogg, Idaho. Plaintiff (appellant) Fawcett was driving his own automobile and plaintiff (appellant) LeDuc was a passenger in Fawcett's car. Both were injured and each filed a separate action for personal injuries, and Fawcett claimed damage to his automobile. The plaintiffs alleged that the injuries arose out of negligent operation of a motor vehicle driven by defendant (respondent) Harold Irby and owned by defendant (respondent) Sweets Candy Co. Defendants denied the allegation of negligence and alleged the defenses of contributory negligence, assumption of risk, sudden emergency, and unavoidable accident.

Defendants also filed a third-party complaint for indemnity against Goodfellow Brothers, a corporation. This company had been performing construction work on the highway in the area where the accident occurred. The third-party complaint was later dismissed and no appeal was taken from that order.

The two actions were consolidated for trial. Upon trial the jury rendered a general verdict for defendants, upon which judgment was accordingly entered. Plaintiffs' motion for judgment notwithstanding the verdict or for a new trial was denied. Plaintiffs brought this appeal from the judgment on the verdict and from the order denying a new trial.

At the place where the accident occurred, U. S. Highway 10 was under construction as a four-lane divided highway. At the time of the accident, however, the two eastbound lanes were not open to traffic and the two westbound lanes were being used for two-way traffic. Defendant Irby, driving a vehicle belonging to his employer, Sweets Candy Co. and within the scope of his employment, was traveling west on the highway. Plaintiffs Fawcett and LeDuc were traveling east on the highway, Fawcett driving and LeDuc, his passenger, sitting on the righthand side of the front seat. There were also other cars moving east ahead of Fawcett. Irby turned to his left from the westbound lane, and entered upon the eastbound lane to pass a slower moving westbound vehicle drawing a trailer-house, unaware of traffic approaching from the west. During the operation Irby was not looking forward, but was observing the vehicle which he was attempting to pass, to determine when he could return to the westbound lane. He continued driving west on the wrong side of the highway directly into the path of an automobile coming from the west, operated by one Roy Harvey. Harvey swerved to the right onto the shoulder of the road. The two cars side-swiped, the left rear side of each making contact. Irby tried to stop, but continued to move west and collided head on with a second eastbound car driven by one Floyd Merang. Fawcett was driving east following the Merang car. He was unable to avoid the Merang car and crashed into the rear end thereof. The accident occurred in

daylight, the road was straight, dry, properly marked, and visibility was good. Traffic was fairly heavy in either direction. The evidence was conflicting as to the speed of the Fawcett vehicle; immediately before the collision it was estimated as low as 35 miles per hour and as high as 50 miles per hour. At the instant of impact its speed was estimated from 5 to 30 miles per hour. The distance between the Merang and Fawcett automobiles just prior to the emergency was between 75 and 100 feet.

Fawcett admitted that the first he realized an accident was imminent was when he observed flying glass from the Irby-Merang collision. Despite the fact he was looking forward prior to and during the occurrence he did not notice the Irby and Harvey cars nor did he see the Merang car slow down, skid or exhibit its brake lights. However, there was evidence that the Merang vehicle skidded in attempting to stop and that its brake lights were functioning properly.

LeDuc was sitting in the front passenger seat in such way that he was facing Fawcett and did not have the road in view as the accident developed. He and Fawcett had been conversing while driving along. He observed an expression of alarm cross Fawcett's face. He then looked forward in time to see the collision between the Irby and Merang cars. However, in a deposition introduced during the trial LeDuc had stated that he had seen Irby's car pull out of its proper lane prior to the collision. During the trip LeDuc had made no complaints or comments about the manner of Fawcett's driving. There was conflicting evidence as to whether Merang's car was moving forward, stopped, or moving backwards (as a result of its collision with the Irby vehicle) when Fawcett's car struck its rear end.

 Plaintiffs urge that the court erred in refusing to direct a verdict in their favor at the close of the evidence, and in denying their motion for judgment notwithstanding the verdict. In support of their position, plaintiffs contend there was

no showing of contributory negligence on their part. The evidence of contributory negligence on the part of the plaintiffs was meager, but sufficient that submission of this issue to the jury was not reversible error. A motion for a directed verdict or judgment notwithstanding the verdict admits the truth of the adverse evidence and every inference of fact which may be legitimately drawn therefrom. Loomis v. Hannah, 89 Idaho 358, 404 P.2d 568 (1965); Foster v. Thomas, 85 Idaho 565, 382 P.2d 792 (1963). Where reasonable minds may differ as to the conclusion to be drawn from the evidence, the issue of contributory negligence is properly one for determination by the jury. Kelley v. Bruch, 91 Idaho 50, 415 P.2d 693 (1966); Foster v. Thomas, supra.

 Giving of instruction 33A is assigned as error. This instruction contained a proper statement of the duty of a driver following a vehicle ahead, and the distances required for stopping a vehicle traveling at various speeds mentioned in the evidence, all as provided by the Idaho Drivers Handbook. The handbook is judicially noticed. Howard v. Missman, 81 Idaho 82, 337 P.2d 592 (1959). The instruction was pertinent to the issues tried and was properly given.

At the time of the accident, Fawcett was an insurance agent for the Monarch Life Insurance Company. LeDuc was an agency supervisor for the same company. Fawcett's job that day (and the purpose of the trip) was to sell insurance. LeDuc's job was to train Fawcett and to assist him in selling insurance. There was conflicting evidence on the issue of whether or not LeDuc had any supervisory authority over Fawcett. By uncontroverted evidence it was shown that Fawcett received no monetary benefit from Monarch Life Insurance Company for the use of his car.

 The giving of instruction No. 25 was not error. This instruction contained a correct statement of the law of joint venture as applied to plaintiffs Fawcett and LeDuc.

 Plaintiffs assign as error the overruling of their objections to testimony on

**52**

cross-examination of LeDuc as to other accidents and injuries suffered by him. This evidence was material to the issue of the extent of LeDuc's injuries which were attributable to the accident out of which this action arose. Its admission was not erroneous.

■ Plaintiffs complain of the submission to the jury of exhibits which were introduced by third-party plaintiffs and *third-party defendants notwithstanding the* fact that the third-party action had been dismissed prior to the submission of the cause to the jury. Plaintiffs urge that such exhibits were not material or relevant to any issue submitted to the jury and could serve only to confuse the jury. However, plaintiffs made no objection to the exhibits either before or after the third-party action was dismissed. Such objections cannot be urged for the first time on appeal. Crosby v. Putnam, 89 Idaho 45, 402 P.2d 389 (1965); Blue Note, Inc. v. Hopper, 85 Idaho 152, 377 P.2d 373 (1962); Fuchs v. Lloyd, 80 Idaho 114, 326 P.2d 381 (1958); cf. McLean v. City of Spirit Lake, 91 Idaho 779, 430 P.2d 670 (1967).

■ Plaintiffs assign as error the denial of their motion to separate for trial the third-party action from their action against defendants. The consolidation or severance of several claims arising out of the same incident is within the sound discretion of the trial court. Absent abuse of such discretion, and no abuse is shown here, this court will not upset the district court's resolution of the issue. Crosby v. Putnam, supra; Blue Note, Inc. v. Hopper, supra; Branom v. Smith Frozen Foods of Idaho, Inc., 83 Idaho 502, 365 P.2d 958 (1961); Fuchs v. Lloyd, supra; cf. McLean v. City of Spirit Lake, supra; IRCP Rules 20(a), 20(b), 42(a), 42(b).

Plaintiffs argue that instructions 18, 19, 20, 21 and 22, concerning negligence of a passenger, were so cumulative and repetitious as to prejudice their cause. A reading of these instructions reveals that the instructions covered several different aspects of the law of negligence as applied to a passenger in a motor vehicle. Instruction 21 is repetitive of the law covered by instruction 20.

"In explaining and clarifying the issues and defining terms in an action involving negligence, contributory negligence, proximate cause, and burden of proof, some repeated reference to these terms and issues is necessary. [cases cited]. In his instructions the trial judge should avoid unnecessary repetition and make the instructions as brief and concise as possible. However, clarity is of paramount importance and is not to be sacrificed to brevity." Stuchbery v. Harper, 87 Idaho 12, at 20, 390 P.2d 303, 307 (1964).

Domingo v. Phillips, 87 Idaho 55, 390 P.2d 297 (1964). Cf. Addy v. Stewart, 69 Idaho 357, 207 P.2d 498 (1949).

■ The trial court correctly refused to give appellants' requested instruction that any contributory negligence of William Fawcett could not be imputed to Ed LeDuc. If a joint enterprise exists between a car driver and a passenger, the contributory negligence of the driver may be imputed to the passenger. Grant v. Clarke, 78 Idaho 412, 305 P.2d 752 (1957). This court has defined joint enterprise as follows:

"* * * The general rule appears to be that in order to constitute a joint enterprise with relation to the operation of an automobile there must be a joint interest or community of interest in the purpose of the undertaking, and an equal right, express or implied, to exercise some control over the conduct of each other in respect thereto. [cases cited]" Griffin v. Clark, 55 Idaho 364, 375, 42 P.2d 297, 302 (1935).

■ There was sufficient evidence introduced to require submission to the jury of the issue of joint enterprise between the plaintiffs Fawcett and LeDuc.

Plaintiffs urge that instruction 26 was erroneous.[1] This instruction contains portions of the statute defining the basic rule governing speed and conduct of drivers upon the state highways. Paragraph (a) was pertinent to the issues and was properly given. The reference in paragraph (c) to "grade crossing," "intersection," "railway grade crossing," "hill crest," "narrow or winding roadway," "pedestrians," should have been eliminated from the instruction, since none of such hazards existed at the time and place of the accident. The reference to "other traffic" and to "highway conditions" were pertinent in view of the evidence of heavy traffic, and the two-way use of the highway at that point. However, the instruction is not reversibly erroneous, since it does not appear that the jury could have been led to believe from the instruction that any of the other special hazards existed at the time and place of the accident. Gardner v. Hobbs, 69 Idaho 288, 206 P.2d 539, 14 A.L.R.2d 478 (1949); IRCP Rule 61.

Plaintiffs also assign as error the court's instructions 23 and 24, giving to the jury the law on the subject of assumption of risk. As applied to plaintiffs, these instructions were erroneous and prejudicial. The defense of assumption of risk presupposes that the plaintiffs had some actual knowledge of the danger, and understood and appreciated the risk therefrom and voluntarily exposed themselves to such danger. Metz v. Haskell, 91 Idaho 160, 417 P.2d 898 (1966); Hodge v. Borden, 91 Idaho 125, 417 P.2d 75 (1966); Domingo v. Phillips, 87 Idaho 55, 390 P.2d 297 (1964). The defense was properly pleaded in this case, but there was no evidence to support it. The evidence did not show that plaintiffs had prior knowledge of the danger confronting them as they proceeded on their proper side of the highway, nor is there any evidence that they voluntarily exposed themselves to the danger which actually confronted them.

Instruction 24 advised the jury that the defense of assumption of risk did not require any showing that the assumption of the risk was the proximate cause of the injury and that if the risk of the danger was assumed it would bar recovery even though the assumption or risk played no part in causing the accident, except merely to expose the plaintiffs to danger. Thus the jury could have been influenced to find against plaintiffs because of acts or conduct on their part which did not proximately cause or contribute to the accident.

Plaintiffs complain that instruction 36[2] expresssing the doctrine of sudden emergency was not specifically made applicable to plaintiffs only. Defendants were not entitled to the benefit of the doctrine because it was the negligence of Irby in turning onto the wrong side of the highway in the face of oncoming traffic, that gave rise to the emergency. Plaintiffs

---

1. "Section 49-701, Idaho Code, provides:
 "(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.
 \* \* \* \* \*
 "(c) The driver of every vehicle shall, consistent with the requirements of paragraph (a), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, \* \* \* when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

2. You are instructed that a person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation.

were entitled to the benefit of the doctrine, in event the jury found there was no prior negligence on their part which gave rise to the emergency they later faced. Plaintiffs are in no position to complain of the instruction, because it was requested by them, as given. Werth v. Tromberg, 90 Idaho 204, 409 P.2d 421 (1965). However, on the new trial it should be revised to expressly apply to plaintiffs only.

The judgment is reversed and the cause is remanded for a new trial.

Costs to appellants.

SMITH and McQUADE, JJ., and NORRIS, D. J., concur.

SPEAR, Justice (concurring specially).

■ I concur in the result of Justice Taylor's opinion, i. e., that the judgment must be reversed and the cause remanded for a new trial, but for a different reason. The majority opinion is based upon the contention that the principle of assumption of risk was inapplicable to the particular facts at hand and it was reversible error for the trial court to give such an instruction. I would hold that the assumption of risk instruction *should never be given* in a tort action with two exceptions: (1) where there is a master-servant relationship outside the scope of the Workmen's Compensation Act; and (2) in instances of express contract with one party agreeing to assume the risk involved.

There is a split—in fact, a yawning chasm—in the authorities on this question. On the one hand are those holding that the assumption of risk doctrine can be distinguished from the doctrine of contributory negligence and that in fact both doctrines can be applicable to the same facts in which the plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable and thus amounts to contributory negligence. This line of reasoning has been adopted by the Restatement of the Law, Torts, Second, § 496(a) pp. 560–65. For a collection of cases adhering to this principle see the Reporter's Notes to § 496(a) in the appendix to the Restatement of the

Law, Torts, Second, p. 411. Other cases are collected in 82 A.L.R.2d in an annotation beginning on page 1218. For a recent enlightened decision in which the court decided to follow this line of decisions see City of Tucson v. Holliday, 3 Ariz.App. 10, 411 P.2d 183 (1966); but even there the court points out:

"As to what circumstances may justify an assumption of risk instruction, the interrelationship of various legal principles involved demands some leeway for the exercise of discretion by the trial judge. This arises from the overlapping of the defenses of assumption of risk and contributory negligence, and the possibility of injecting confusion into the minds of the triers of fact." (411 P.2d at p. 191)

It is observed by the annotator in 82 A.L.R.2d 1226, that while the courts generally adhere to the view that assumption of risk and contributory negligence are separate and distinctive defenses, the attempts by the courts to formulate the distinction between the two have resulted in great confusion. It is also pointed out that ordinarily the distinctions made by the courts are not too helpful. Illustrative of such attempts are statements to the effect that assumption of risk involves a mental state of willingness, while contributory negligence depends upon the conduct of the plaintiffs; that assumption of risk involves more or less deliberation, wherein contributory negligence implies the absence of a deliberate choice; that the essence of assumption of risk is "venturousness," while the essence of contributory negligence is "carelessness"; that the defense of assumption of risk rests in contract or may exist independently of any contractual relation, whereas the defense of contributory negligence rests in tort; or that, as distinguished from contributory negligence, causal relation between assumption of risk and injuries is immaterial, or in other words the question of proximate cause is not involved where the principle of assumption of risk is applied.

My own experience while serving as a trial judge for nearly twelve and one-half years has taught me that after having listened to proper instructions on negligence, contributory negligence, proximate cause and some forty other instructions, as were given in the case at hand, any jury is sufficiently confused without adding thereto instructions on assumption of risk together with its necessary corollaries, i. e., the subjective test—what peril, if any, was actually apprehended and understood by the plaintiff and voluntarily assumed; the fact that proximate cause has no bearing on the principle of assumption of risk; and some instruction trying to define the distinction between assumption of risk and contributory negligence.

The other line of authorities agree with my conclusion and point out that in its primary sense the plaintiff's assumption of risk is only the counterpart of the defendant's duty to protect the plaintiff from that risk. In such a case plaintiff may not recover for his injury even though he was quite reasonable in encountering the risk that caused it. *Volenti non fit injuria* (he who consents cannot find injury). In a secondary sense the assumption of risk is merely a form of contributory negligence and is an overlapping of that principle. In this secondary sense a plaintiff may also be said to assume a risk created by defendant's breach of duty towards him, when he deliberately chooses to encounter that risk. In such a case, except possibly in master and servant cases, plaintiff will be barred from recovery only if he were *unreasonable* in encountering the risk under the circumstances. Thus this is really a form of contributory negligence. It is contended that these concepts of the principle of assuming the risk are purely duplicative of other more widely understood concepts, such as scope of duty or contributory negligence. As concluded by Fleming James, Jr. (co-author of Harper and James, Law of Torts), in his article in 61 Yale Law Journal 141, at page 169:

"Except for express assumption of risk, therefore, the term and the concept should be abolished. It adds nothing to modern law except confusion. For the most part the policy of individualism it represents is outmoded in accident law; where it is not, that policy can find full scope and far better expression in other language. There is only one thing that can be said for assumption of risk. In the confusion it introduces, it sometimes— ironically and quite capriciously—leads to a relaxation of an overstrict rule in some other field. The aura of disfavor that has come to surround it may occasionally turn out to be the kiss of death to some other bad rule with which it has become associated. We have seen how this may happen with the burden of pleading and proving an exceptional limitation on the scope of defendant's duty. There may be other instances. But at best this sort of thing is a poor excuse indeed for continuing the confusion of an unfortunate form of words."

I cannot help but agree with the conclusion reached by the supreme court of New Jersey in McGrath v. American Cyanamid Co. et al., 41 N.J. 272, 196 A.2d 238, at pages 240–241, (1963) where the court points out:

"In Meistrich we said the terminology of assumption of the risk should not be used when it is projected in its secondary sense, i. e., that of contributory negligence ([Meistrich v. Casino Arena Attractions Inc.] 31 N.J. 44, at p. 55, 155 A.2d 90 at p. 96, 82 A.L.R.2d 1208). We thought, however, that '[p]erhaps a well-guarded charge of assumption of risk in its primary sense will aid comprehension. [citation] We added [citation]:

"'* * * With respect to its primary sense, it will not matter whether a trial court makes or omits a reference to assumption of the risk, provided that if the terminology is used the jury is plainly charged it is merely another way of expressing the thought that a defendant is not liable in the absence of negligence; that a plaintiff does not assume a risk defendant negligently created [citation];

**56**

and that if defendant is found to have been negligent, plaintiff is barred only if defendant carries the burden of proving contributory negligence, i. e., plaintiff's failure to use the care of a reasonably prudent man under all of the circumstances either in incurring the known risk or in the manner in which he proceeded in the face of that risk.'

"Experience, however indicates the term 'assumption of risk' is so apt to create mist that it is better banished from the scene. We hope we have heard the last of it. Henceforth let us stay with 'negligence' and 'contributory negligence.'"

With this conclusion I concur most wholeheartedly.

This court has recently held that contributory negligence is a defense in host-guest cases where the plaintiff has the burden of establishing misconduct amounting to "gross negligence," and therefore there is no longer any reason for inserting the principle of assumption of risk even in those cases. Hodge v. Borden, 91 Idaho 125, 417 P.2d 75 (1966).

For other recent decisions following what I consider the better line of reasoning see Bulatao v. Kauai Motors, Ltd., 406 P.2d 887 (Hawaii 1965); Felgner v. Anderson, 375 Mich. 23, 133 N.W.2d 136 (1965); and Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 155 A.2d 90, 82 A.L.R.2d 1208 (1959).

The cause at hand is illustrative of the danger of using the doctrine of assumption of risk. If the defendants had not requested that instruction together with its companion relative to there being no requirement that the assumption of risk be causative of plaintiff's injuries, and providing, of course, the trial court did not give similar instructions on its own, the parties and the court would be spared the time, extra work load and expense necessarily involved in a new trial.

I have carefully examined the leading Idaho cases which have discussed or recognized the assumption of risk doctrine and

find nothing therein which would require retaining this doctrine. Williams v. Collett, 80 Idaho 462, 332 P.2d 1032 (1958); and Deshazer v. Tompkins, 89 Idaho 347, 404 P.2d 604 (1965), both involve master-servant relationships and therefore fall within one of the exceptions mentioned herein where the doctrine could be retained and applied. In Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651 (1950); Domingo v. Phillips, 87 Idaho 55, 390 P.2d 297 (1964); and Hodge v. Borden, 91 Idaho 125, 417 P.2d 75 (1966), the facts would have supported a finding for the defendants on the principle of contributory negligence without adding the confusing principle of assumption of risk.

Therefore, with the two exceptions mentioned, I recommend the complete banishment of the assumption of risk doctrine in Idaho. Instead, let us uniformly apply the better understood and more easily explainable principles of "negligence" and "contributory negligence."

TAYLOR, C. J., SMITH and McQUADE, JJ., and NORRIS, D. J.

We concur with Justice Spear's views on assumption of risk but do not think they are necessary to a decision in this case.